DOWD, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| Vincent Stokes, | ) |
| | ) CASE NO. 5:08 CV 347 |
| Plaintiff, | ) |
| | ) |
| v. | ) MEMORANDUM OPINION |
| | ) |
| Bridgestone Firestone N.A., LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

This action for violation of the Family Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.* (FMLA) was removed by defendant Bridgestone Firestone N.A., LLC (Bridgestone) from the Summit County Court of Common Pleas.  *See* ECF 1-2.  Pending before the Court is defendant's motion for summary judgment.  ECF 17.  Plaintiff opposed defendant's motion (ECF 21), to which defendant replied (ECF 22).[1]

For the reasons discussed herein, defendant's motion is GRANTED.

## I.  FACTUAL BACKGROUND

**A.** **Plaintiff's Employment History with Bridgestone**

Plaintiff Vincent Stokes (Stokes) was hired by Bridgestone on May 9, 1989 at its tire research and development facility in Akron, Ohio.  Stokes was hired as an industrial cleaner. On September 23, 1996, Stokes bid for and obtained a position as an experimental technician. Stokes held that position until he was terminated by Bridgestone on October 12, 2006.  At all

---

[1] In addition, at the Court's request, the entire deposition transcripts of plaintiff and defendant's human resources manager, Jacquelyn Childress were filed, as well as clarification of a plaintiff's and defendant's exhibit.  *See* ECF 23, 24 and 25.

(5:08 CV 347)

relevant times, Stokes worked the first shift - 6:00 a.m. to 2:00 p.m.  During his employment with Bridgestone, plaintiff was represented by a union.

**B.**     **Collective Bargaining Agreement**

As a member of the union, Stokes' employment with Bridgestone was governed by a collective bargaining agreement (CBA).  The CBA provisions relevant to this case are Article XII, Section 4(a) and Section 4(b).  Those sections provide as follows:

> Article XII - General Provisions
> . . . . .
> Section 4
>
> (a) (see Appendix A, Attendance Program) Excessive absenteeism may be cause for disciplinary action which may include discharge.  An employee absent seven calendar days without report shall be considered to have quit, but will be reinstated if he presents satisfactory evidence that his failure to report was due to circumstances beyond his control.
>
> (b) An employee who is scheduled for work and is unable to report for work is required, when possible, to notify the Company prior to the beginning of his scheduled shift.
>
> Such notification shall be by telephone or any other suitable means, and shall state the reason for such absence and the expected duration.  Each plant will post in prominent places the telephone number to be used for the telephone calls referred to in this paragraph.  If the absence exceeds the expected duration further notification shall be furnished in the same manner.  The Company may furnish confirmation of such report and when received.

*See* ECF 18-2, pp. 80-81 of 182.

> Appendix A - Attendance Program
>
> A.     An incident of absence is defined as one scheduled shift of absence, unless otherwise provided in paragraphs D, E, F, G or H, below.
>
> . . . . .

(5:08 CV 347)

      C.      Having five incidents of absences in a nine month period will result in a counseling session regarding the employee's unacceptable attendance. During the meeting, an explanation of the program will be given.

          . . . . .

      G.      An incident of tardiness is considered one-half of an incident of absence. However, if a tardy employee does not report within the first half of his regular shift, it will be counted as a full incident of absence.

*See* ECF 18-2, pp. 84-85 of 182.

Section 4(a) deals with absenteeism. The CBA's Attendance Program considers tardiness an absence. *See* Section G, *supra*. Section 4(b) requires employees to notify the company before their shift begins if they will be absent. Tardiness is considered an absence under the CBA, and the language of Section 4(b)'s report-off requirement applies to tardiness as well as absence from an entire shift.[2]

However, the fact of tardiness or absence from an entire shift in and of itself does not violate Section 4(b). Section 4(b) is violated only if the employee fails to notify the company before the start of his shift that he will be tardy or otherwise absent.

**C.**     **Plaintiff's FMLA Leave**

Bridgestone and the union negotiated an agreement regarding accident and sickness benefits for non-occupational illnesses and injuries (A & S Benefits). This benefit entitles an employee to up to fifty-two weeks of paid leave per qualifying event.

---

[2] *See also* the opinion of Arbitrator Vaughn, who interpreted the report-off requirement of Section 4(b) to include tardiness in his opinion denying plaintiff's grievance of his termination for repeatedly failing to report-off prior to the beginning of his shift. ECF 18-2, p. 171 of 182.

3

(5:08 CV 347)

The FMLA provides employees twelve weeks of unpaid leave on a rolling calendar basis for a "serious health condition." An employee's eligibility for A & S Benefits also satisfies the definition of a "serious health condition" under the FMLA. As permitted by the FMLA, Bridgestone and the union agreed that FMLA leave would run concurrently with A & S Benefits leave. Therefore, the first twelve weeks of an employee's A& S Benefits leave also counts as FMLA leave.

Plaintiff's FMLA leave history is as follows:

1. On December 6, 2004, plaintiff requested A & S Benefits leave for an absence from November 12, 2004 to December 6, 2004 due to an injured finger. This leave was approved FMLA leave.

2. In summer 2005, Stokes requested A & S Benefits leave for an injured wrist. However, his paperwork was not timely filed and therefore his request was denied. A grievance was filed over this denial, and was resolved by allowing plaintiff to take unpaid FMLA leave for his injured wrist.

3. On January 3, 2006, plaintiff requested A & S Benefits leave due to kidney stones. His leave began December 12, 2005 and he was released by his doctor on January 3, 2006. The requested leave was approved FMLA leave.

**D.    Plaintiff's Failure to Report Off Work**

Article XII, Section 4(b) of the CBA requires Bridgestone employees to call before the start of their shift if they are unable to report to work, whether their inability to report at the start of their shift is due to tardiness or absence from the entire shift. Plaintiff did not report to work

4

(5:08 CV 347)

at the start of his shift at 6:00 a.m. and did not call, as required by Article XII, Section 4(b), on the following occasions in 2006:

| Date | Report-off Incident | Bridgestone Response |
| --- | --- | --- |
| 2/9/06 | Called off at 8:50 AM; reported at 9:20 AM. | Note to file; verbal warning 2/9/06 [3] |
| 3/17/06 | Called off at 6:30 AM; told not to report because shift was covered. | Written warning 3/20/06 [4] |
| 3/31/06 | Did not call; reported at 6:45 AM | Written reprimand 4/5/06 [5] |
| 5/22/06 | Did not call; reported at 9:20 AM | One day suspension 5/22/06 [6] |
| 10/6/06 | Called off at 6:30 AM; reported at 6:40 AM | Terminated 10/12/06 [7] |

Plaintiff does not dispute that he did not report to work on these dates at the start of his shift or that he did not notify defendant before the start of his shift. Prior to his termination, plaintiff did not challenge the progressive discipline imposed because he did not report-off before the start of his shift.

Stokes was terminated on October 12, 2006 for repeated violation of Article XII, Section 4(b) of the CBA. Plaintiff grieved his termination, which progressed to arbitration. The arbitrator concluded that Bridgestone had properly applied the CBA, including the use of progressive discipline, for violation of Section 4(b)'s report-off provision, and that Bridgestone

---

[3] ECF 18-2, p. 151 of 182.

[4] ECF 18-2, p. 153 fo 182.

[5] ECF 18-2, p. 155 of 182.

[6] ECF 18-2, p. 157 of 182.

[7] ECF 18-2, p. 159 of 182.

5

(5:08 CV 347)

had just cause to terminate Stokes for not calling in when he was going to be late.[8] Consequently, the arbitrator denied plaintiff's grievance of his termination. *See* ECF 18-2, pp. 169-172 of 182.

The arbitrator's determination that plaintiff's termination did not violate the CBA is a separate question from whether plaintiff's termination violates the FMLA. However, the Court may consider the arbitrator's decision as evidence of procedural fairness in the arbitral forum and adequacy of the record with respect to defendant's termination of plaintiff pursuant to the CBA. *See Nance v. Goodyear Tire & Rubber Co.,* 527 F.3d 539, 549 (6th Cir. 2008)(affirming entry of summary judgment for employer as to FMLA and ADA violations).

### III. LAW AND ANALYSIS

**A.** **Summary Judgment Standard**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 . When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). However, the adverse party "may not rest upon mere allegation

---

[8] According to the arbitrator's written opinion, plaintiff argued that he was late because he was unable to wake up in the morning due to a sleep disorder and various medical problems, including anxiety and depression. However, the arbitrator observed that plaintiff had apparently known about his claimed medical problems when he switched to the first shift in 2004, and that despite Bridgestone's progressive discipline, plaintiff failed to take steps to correct the situation, including changing shifts which he had the seniority to do, and obtaining treatment for his alleged medical problems.

With respect to plaintiff's alleged depression, according to plaintiff "this is a non-issue in this FMLA retaliation case." *See* ECF 21, p. 11 of 14. The Court agrees, and therefore, plaintiff's depression is not part of the Court's analysis.

(5:08 CV 347)

or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The Rule requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes.  *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).  Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony." *Reid v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (citing *Biechell v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)); *but see Baer v. Chase*, 392 F.3d 609, 623-26 (3d Cir. 2004) (noting that a so-called "sham" affidavit need not be disregarded if there is "independent evidence in the record to bolster [the] otherwise questionable affidavit").  Further, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (quoting *Anderson v. Liberty Lobby*, 477 U.S. at 252).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. at 250.  Put another way, this Court must

7

(5:08 CV 347)

determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. *See also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment").

**B.** **Plaintiff Cannot Establish Retaliation Under the FMLA**

Plaintiff's complaint alleges that he was terminated by Bridgestone in violation of 29 U.S.C. §§ 2615(a)(2) and (b)(2). Absent direct evidence of unlawful conduct, FMLA retaliation claims are evaluated according to the burden shifting framework announced in *McDonnell Douglas Corp. v. Green. Bryson v. Regis Corp.,* 498 F.3d 561, 570 (6th Cir. 2007)(citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972)).

In order to establish a prima facie of case of retaliatory discharge under the FMLA, plaintiff must prove that: 1) he availed himself of a protected right under the FMLA; 2) defendant thereafter took an employment action adverse to plaintiff; and 3) there was a causal connection between the protected activity and the adverse employment action. *Bryson,* 498 F.3d at 570 (citing *Skrjanc v. Great Lakes Power Service Company,* 272 F.3d 309, 314 (6th Cir. 2001)).

If plaintiff establishes a prima facie case, the burden shifts to defendant to come forward with a legitimate, non-retaliatory reason for terminating plaintiff. *Bryson,* 498 F.3d at 570.

8

(5:08 CV 347)

If the defendant can articulate a legitimate, non-retaliatory reason for the adverse employment action, then the burden shifts back to plaintiff to produce evidence that the reason given is a pretext for unlawful FMLA retaliation. *Id.*

### 1. Plaintiff has not Established a Prima Facie Case as to 29 U.S.C. § 2615(b)(2)[9]

Plaintiff's complaint alleges that he was terminated in violation of 29 U.S.C. § 2615(b)(2). This section provides that:

> § 2615. Prohibited Acts
>
> > (b) It shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual -
> >
> > . . . . . .
> >
> > (2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter.

In order to establish a prima facie case, plaintiff must first show that he availed himself of a protected right under the FMLA. The protected right under § 2615(b)(2) relates to providing information in connection with an inquiry or proceeding regarding FMLA rights. However, there are no facts to support a finding that plaintiff provided information relating to an FMLA inquiry or proceeding. Prior to termination, plaintiff did not dispute or challenge the various steps of progressive discipline taken by Bridgestone. After he was terminated, plaintiff filed an

---

[9] Defendant has moved for summary judgment on plaintiff's FMLA claim. However, Bridgestone's memorandum in support of summary judgment does not address plaintiff's claim for violation of Section 2615(b)(2), but only addresses the claim for violation of Section 2615(a)(2). Defendant's reason for not addressing Section 2615(b)(2) is that there are no facts to support a violation of that section. *See* ECF 18, p. 12 of 21. In opposing defendant's motion for summary judgment, plaintiff also does not address Section 2615(b)(2).

9

(5:08 CV 347)

age discrimination claim with the EEOC[10] and grieved his termination.[11]  But these events do not constitute protected activity under § 2615(b)(2) and took place <u>after</u> plaintiff was terminated.

The Court finds that, based on the record before it which is devoid of facts to support a § 2615(b)(2) claim, no reasonable juror could find a prima facie case of FMLA retaliation/discrimination under 29 U.S.C. § 2615(b)(2).  In the absence of a prima facie case, defendant is entitle to judgment as a matter of law with respect to plaintiff's claim as to 29 U.S.C. § 2615(b)(2).

Accordingly, defendant's motion for summary judgment as to plaintiff's claim under 29 U.S.C. § 2615(b)(2) is GRANTED.

**2.     Plaintiff has Established a Prima facie case as to 29 U.S.C. § 2615(a)(2)**

Plaintiff's complaint also alleges that he was terminated in violation of 29 U.S.C. § 2615(a)(2).  Section 2615(a) makes it unlawful for an employer to retaliate against an employee for exercising his rights under the FMLA or taking FMLA leave.

As to plaintiff's Section 2615(a)(2) claim, there is no dispute that plaintiff has satisfied the first two elements of a prima facie case.  Stokes took FMLA leave and thereafter was terminated by Bridgestone.

With respect to the third and last element, defendant argues that there was a nine-month period between plaintiff's FMLA leave and his termination and that plaintiff cannot show that

---

[10] Plaintiff filed an age discrimination claim on February 21, 2007 with the U.S. Equal Employment Opportunity Commission.  The EEOC found no probable cause and closed its file on plaintiff's claim on June 1, 2007.  *See* ECF 18-2, pp. 164-166 of 182.

[11] *See* Arbitrator Vaughn's opinion denying plaintiff's grievance.  ECF 18-2, pp. 168-172 of 182.

10

(5:08 CV 347)

his protected activity was the likely reason for his termination. In response, plaintiff contends that defendant's retaliatory conduct began with the first step in progressive discipline, about one month following his return from FMLA leave in January 2006.

Plaintiff's burden in establishing a prima facie case is minimal, and the Sixth Circuit has held that proximity in time between the protected activity and adverse employment action may constitute evidence of a causal connection. *Bryson,* 498 F.3d at 571. In view of plaintiff's minimal burden and construing the facts in the light most favorable to the plaintiff, the Court finds, for the purpose of this analysis, that plaintiff has established a prima facie case of FMLA retaliation.

### 3. Defendant has Presented Evidence of a Legitimate, Non-retaliatory Reason for Terminating Plaintiff

Under the burden shifting framework of *McDonnell Douglas,* once plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a non-retaliatory reason for the adverse employment action. In this case, Bridgestone argues that it terminated plaintiff, not because he took approved FMLA leave, but because, despite progressive discipline, plaintiff repeatedly violated Section XII Section 4(b) of the CBA by failing to notify Bridgestone prior to the beginning of his shift that he would be unable to report to work on time.

Stokes acknowledges that the notice required by Article XII, Section 4(b) was posted and that he understood the requirements of this section to call if unable to report to work. Plaintiff does not dispute that he did not report to work at the start of his shift on the dates at issue or that he did not notify Bridgestone prior to the start of his shift that he would be late. Further, plaintiff

11

(5:08 CV 347)

did not challenge the progressive discipline that was imposed by Bridgestone for each violation of Section 4(b), up until the point of termination.

The Court finds that there are no material facts in dispute that Bridgestone has carried its burden to establish a legitimate, non-retaliatory reason for terminating plaintiff.

### 4. A Reasonable Jury Could not Conclude that Defendant's Reason for Terminating Plaintiff is Pretextual

Once defendant establishes a legitimate, non-retaliatory reason for terminating plaintiff, the burden shifts back to plaintiff to produce evidence that defendant's proffered reason is a pretext for unlawful discrimination. *Bryson,* 498 F.3d at 570.  To establish pretext, plaintiff must show that defendant's proffered reason: 1) had no basis in fact; 2) did not actually motivate the adverse employment action; or 3) was insufficient to motivate the adverse employment decision. *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994); *see also, Virts v. Consolidated Freightways Corp. of Delaware,* 285 F.3d. 508, 521 (6th Cir. 2002) (a reason is not a pretext unless the reason was false and discrimination was the real reason). At the pretext stage of the analysis, the Court must determine whether plaintiff has advanced evidence which would enable a factfinder to conclude that Bridgestone's stated reason for terminating plaintiff is not the true reason, but a pretext for unlawful retaliation in violation of the FMLA.

a. <u>Bridgestone's Termination of Plaintiff had a Basis in Fact</u>

Plaintiff can establish pretext by showing that the proffered basis for discharge is factually false. *Id.*  In this case, plaintiff did not dispute or challenge, through the union grievance or other process, the progressive discipline for failure to report-off on the dates

12

(5:08 CV 347)

indicated, *supra,* that culminated in his termination.  No reasonable juror could conclude from the evidence in the record that Bridgestone's stated reason for discharging plaintiff is factually false.  Accordingly, the Court concludes that there is no material fact in dispute that Bridgestone had a basis in fact for terminating plaintiff.

        b.      <u>Plaintiff's Report-off Violations Actually Motivated Discharge</u>

To establish pretext by showing that plaintiff's report-off violations did not actually motivate Bridgestone to terminate him, plaintiff must establish that although report-off violations could motivate dismissal, there are circumstances in this case which tend to prove that an illegal motivation was more likely than the motivation offered by defendant.  *Id.*  Plaintiff contends that an illegal motivation is more likely than a disciplinary motivation for his termination because: i) he had a significant history of tardiness but was not previously disciplined for tardiness; and ii) before taking FMLA leave, he was not disciplined for report-off violations.  Plaintiff concludes that both of these factors establish that it is more likely that retaliation, not discipline, was defendant's motive for discharge.

With respect to plaintiff's first point, plaintiff directs the Court's attention to his absence record which allegedly shows he was tardy seventy-six times over a seven year period prior to 2006.[12]  However, mere tardiness is not the issue.  In this case, defendant does not assert that plaintiff was terminated for tardiness or excessive absences.  Rather, plaintiff was terminated for failing to report-off work before the start of his shift.[13]

---

[12] *See* ECF 21, pp. 6-7 of 14; 21-4; 21-5; 21-6 and 21-7.

[13] *See* ECF 18-2, p. 91 of 182; ECF 18-2, p. 159 of 182.

(5:08 CV 347)

With respect to his second point, plaintiff asserts in his affidavit that he was not disciplined for violating Bridgestone's call-off rule before taking FMLA leave.[14]  However, this position is not supported by plaintiff's deposition or the record.

Plaintiff states in his affidavit that before taking FMLA leave, he was never disciplined for violating defendant's call-off procedure.[15]  However, plaintiff's deposition reflects that prior to his FMLA leave he was disciplined at least twice for not calling off before the start of his shift on November 1, 2004 and February 4, 2005, and the record evidence supports those facts.[16]

Plaintiff may not create a factual dispute by an affidavit statement that contradicts his deposition testimony.  Further, if a party's statement is blatantly contradicted by the record so that no reasonable jury could believe it, the Court should not adopt that statement for purposes of ruling on a motion for summary judgment.  *Marvin v. City of Taylor,* 509 F.3d 234, 239 (6th Cir. 2008)(citing *Scott v. Harris,* 127 S.Ct. 1769, 1776 (2007)).

The Court finds that there are no material facts in dispute from which a reasonable juror could conclude that defendant's motivation for discharging plaintiff was more likely retaliatory than disciplinary.  Accordingly, the Court concludes that plaintiff cannot establish that a retaliatory motive was more likely than defendant's proffered reason for discharge.

---

[14] Plaintiff's complaint states that the FMLA leave at issue in his retaliation claim began October 2005 and concluded in January 2006.  Plaintiff's testimony and the documents indicate the leave began in December 2005.  However, whether the leave began in October or December 2005, like other minor date discrepancies in the record, is not material to the Court's analysis.

[15] *See* ECF 21-2.

[16] *See* ECF 24-3, pp. 65-67 of 182; ECF 24-2, pp. 153-154 of 166; ECF 18-2, p. 161 of 182, and plaintiff's absence record, ECF 21-7, p. 2 of 5.

14

(5:08 CV 347)

      c.     <u>Bridgestone's Reason was Sufficient to Motivate Termination</u>

Plaintiff can establish that defendant's proffered reason was insufficient to motivate termination, and therefore pretextual, by showing that employees who did not take FMLA leave were not disciplined for failing to report-off prior to the start of their shift.  However, in this case, it is undisputed that Bridgestone disciplined employees who failed to report-off whether they did or did not take FMLA leave.

In his affidavit, plaintiff identifies three individuals who were disciplined for call-off violations who also took FMLA leave, and states that he is "not aware of" any Bridgestone employees who did not take FMLA leave and were disciplined for call-off violations.[17] However, plaintiff's lack of awareness is insufficient to create a material fact dispute when the evidence reflects that employees who did not take FMLA leave were also disciplined for call-off violations.

According to the record, fourteen different employees, including plaintiff, were disciplined for failing to report off work a total of twenty-nine times between 1999 and 2008.[18] Of these employees, only four were identified by both plaintiff and defendant as having taken FMLA leave - plaintiff and three others.  *See* ECF 18-2, pp. 112-114 of 182; ECF 21-2. Excluding plaintiff, the type of discipline imposed on the three employees identified as taking FMLA leave ranged from "note for file" to a one-day suspension.  ECF 18-2, p. 161 of 182.

---

[17] *See* ECF 21-2.

[18] *See* ECF 18-2, pp. 174-175 of 182; ECF 18-2, p. 161 of 182; ECF 24-2, pp. 78-79 of 166.

(5:08 CV 347)

Ten of the fourteen employees disciplined for failure to report-off between 1999 and 2008 were not identified by either plaintiff or defendant as having taken FMLA leave. Like the discipline imposed on the three employees identified as taking FMLA leave, the discipline imposed on these non-FMLA leave employees for failing to report off ranged from "note for file" to a one-day suspension. ECF 18-2, p. 161 of 182.

Although plaintiff may not have been aware of non-FMLA leave employees who were disciplined for call-off violations, there is no factual dispute that Bridgestone employees have been disciplined to the point of suspension for failure to report-off regardless of whether they took FMLA leave. It is undisputed that after the progressive discipline step of suspension, plaintiff once again did not report to work and did not report-off prior to the start of his shift as required by the CBA's Section 4(b). The Court finds that a reasonable juror could not conclude that plaintiff's undisputed and repeated report-off violations were insufficient to motivate discharge.

After examining the three ways in which plaintiff may establish pretext, the Court finds that even construing the facts in a light most favorable to the plaintiff, a reasonably jury could not conclude that Bridgestone's reason for terminating plaintiff is false and that retaliation for taking FMLA leave is the real reason. Accordingly, plaintiff has failed to carry his burden that defendant's reason for terminating plaintiff is a pretext for unlawful FMLA retaliation.

(5:08 CV 347)

## IV.  CONCLUSION

For the reasons discussed above, the Court finds that, when viewing the facts in a light most favorable to the plaintiff there are no genuine issues of material fact in dispute that plaintiff was terminated because he repeatedly failed to report-off work despite progressive discipline by Bridgestone, and that a reasonable jury could not find in plaintiff's favor that he was terminated in retaliation for taking FMLA leave.

Accordingly, defendant is entitled to judgment as a matter of law, and Bridgestone's motion for summary judgment, ECF 17, is GRANTED.

IT IS SO ORDERED.

| | |
|---|---|
| June 8, 2009 | *s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |